UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:14-cv-276-FDW

| | |
|---|---|
| ERIC MORALES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| DR. KEITH KUHNE, et al., ) | |
| ) | |
| Defendants. ) | |

**THIS MATTER** comes before the Court on a Motion for Summary Judgment by Defendant Albert Keith Kuhne, M.D. (Doc. No. 25).

**I.     BACKGROUND**

A.     Procedural Background

Pro se Plaintiff Eric Morales is a North Carolina state inmate currently incarcerated at Alexander Correctional Institution, after having been convicted of first-degree murder on April 16, 2010, and sentenced to life in prison. On October 22, 2014, Plaintiff filed this action under 42 U.S.C. § 1983, naming the following three persons as Defendants: Dr. Keith Kuhne, a physician at Marion Correctional Institution ("Marion") at all relevant times; Susan McNeely, an employee supervisor at Marion at all relevant times; and Bridget Buchanan, a registered nurse at Marion at all relevant times. (Doc. No. 1 at 2). Plaintiff alleged in his Complaint that Defendants were deliberately indifferent to his serious medical needs while he was incarcerated at Marion. Specifically, Plaintiff alleged that on or around September 1, 2012, he requested to be seen by the prison's medical center for sharp and severe pain on his right side and back. (Doc.

1

No. 1 at 3). Plaintiff alleged that Dr. Kuhne treated Plaintiff and prescribed him pain medications. Plaintiff continued to request treatment for the constant pain on his side and back because the pain medicine was not providing any relief. Plaintiff was seen again by Dr. Kuhne, after which Plaintiff "was taken out of work and [was] also given a different pain medication." (Id.). Plaintiff alleged that he continued to have sharp pain and again requested treatment for the pain. Plaintiff was then given several urine and blood tests to check for kidney stones. The test results showed that Plaintiff did not have kidney stones. (Id. at 4).

On or about July 1, 2013, almost ten months later, Plaintiff was still requesting treatment for "non-stop pain on his right side and back." (Id.). On or about August 27, 2013, Plaintiff was sent to Central Prison for an abdominal scan. (Id.). On or about September 9, 2013, Plaintiff was sent back to Central Prison for an X-ray computed tomography ("CT") scan. (Id.). Dr. Kuhne received the test results from the two tests and made his own determination that the testing had to be inaccurate and that Plaintiff was suffering from multiple kidney stones. Plaintiff alleges that Dr. Kuhne "refused to acknowledge the test results and is not following medical standards established." (Id.). Plaintiff was then given urine filters to catch kidney stones. (Id.). Plaintiff used the urine filters for two weeks but they did not catch any kidney stones. (Id. at 5).

Plaintiff continued to request treatment for the severe and non-stop pain that he had experienced for ten months. Plaintiff was then taken to see a specialist in digestive health, Dr. Duane Muise. (Id.). Dr. Muise reviewed Plaintiff's test results and determined that Plaintiff did not have kidney stones, but that he "did have a large mass in his pancreas that could be malignant." (Id.). On October 25, 2013, Plaintiff was rushed to the emergency room "due to an infected and inflamed pancreas." (Id.). Plaintiff was admitted to the hospital and was given

2

antibiotics for approximately six days.  (Id.).  Plaintiff alleges that he was then discharged from the hospital because prison guards had complained to hospital staff about the long drive they had to make to the hospital to rotate shifts.  (Id. at 5-6).  Plaintiff alleges that he was subsequently "not provided any remedy for the mass in his pancreas and [was] told that he would have to live with it."  (Id. at 6).  Plaintiff alleges that he was then transported back to the prison, where no further treatment was provided.  (Id.).  Plaintiff alleges that "[d]ue to the denial and refusal by the Defendants, Plaintiff [] has suffered pain and discomfort from his serious medical need." (Id.).  He alleges that he "has requested on numerous occasions to be provided care for his condition but has only received pain medication."  (Id. at 6).  Plaintiff seeks $500,000 in compensatory damages from each defendant and $150,000 in punitive damages from each defendant.  (Id. at 8).

On October 24, 2014, this Court entered an order, requiring Plaintiff to "demonstrate exhaustion of all administrative remedies available" by filing "a sworn statement, subject to the penalty of perjury, showing exhaustion of remedies or a copy of the grievance itself."  (Doc. No. 5 at 1).  On October 29, 2014, Plaintiff filed his Verified Statement indicating that he had exhausted his administrative remedies and "attached copies of grievances demonstrating completion."  (Doc. No. 7).  Plaintiff attached to his Verified Statement a February 14, 2014, Step 3 Findings and Disposition Order relating to Unit Grievance No. 3730-H-13-4159, originally submitted on November 12, 2013, concerning Plaintiff's allegations that Dr. Kuhne had misdiagnosed him as having kidney stones.  (Id. at 2; see also Doc. No. 23-1 at 14-17: Pl.'s Grievance No. 3730-H-13-4159).

On March 6, 2015, the Court entered an order on initial review dismissing Defendants McNeely and Buchanan because Plaintiff alleged no personal participation by these two

3

Defendants. (Doc. No. 8). The Court further concluded that Plaintiff had asserted two potential claims, of which only one survived against Dr. Kuhne. (Id. at 5-6). Plaintiff's first potential claim alleged that, beginning on September 1, 2012, Dr. Kuhne and the other defendants misdiagnosed Plaintiff's right side and back pain as being caused by kidney stones, rather than by "a large mass in his pancreas that could be malignant" shown by an "8-27-13" "abdominal scan" and "9-9-13" CT scan. (Doc. No. 1 at 3-5). The Court concluded that this claim was subject to dismissal at the frivolity stage "because Plaintiff alleges medical negligence at most, which is simply not sufficient to state a claim for an Eighth Amendment violation based on deliberate indifference to a serious medical need."[1] (Doc. No. 8 at 5).

Plaintiff's second potential claim relates to Plaintiff's allegations that, after a digestive health specialist determined that the abdominal scan and CT scan showed that Plaintiff had a pancreatic mass, Plaintiff was not provided any remedy at Marion "for the large mass in his pancreas and [was] told that he will have to live with it" and "no further treatment was provided." (Doc. No. 1 at 5-6). Based on Plaintiff's allegations, the Court found that this second claim was "not clearly frivolous," noting that

> the only potential claim that survives against Dr. Kuhne relates to Plaintiff's allegation that the prison is not treating the mass in his pancreas and that, at most, the prison has given him pain medications. Based solely on Plaintiff's

---

[1] That is, Plaintiff alleged, at most, that Dr. Kuhne wrongly diagnosed Plaintiff with having kidney stones, and he failed to diagnose Plaintiff's pancreatic mass, which Plaintiff contends was negligent. This type of allegation—an erroneous diagnosis of a medical condition—is a garden-variety medical malpractice claim, which does not rise to the level of a federal constitutional violation for deliberate indifference to a serious medical need. See Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014) ("While a non-cardiologist's erroneous diagnosis of a serious heart condition, as alleged by [Plaintiff], may well represent a deviation from the accepted standard of care, standing alone it is insufficient to clear the 'high bar' of a constitutional claim.") (quoting Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008)). Plaintiff is not without a remedy—he can still bring a medical malpractice claim in state court, but he will have to comply first with Rule 9(j) of the North Carolina Rules of Civil Procedure.

4

> allegations, the Court cannot discern whether the mass is some form of inoperable cancer and that pain management is the only available treatment at this point. Furthermore, it is not clear whether Plaintiff is under the care of Dr. Kuhne with regard to his ongoing treatment of the mass in Plaintiff's pancreas. The Court finds that—solely as it relates to Plaintiff's claim that the prison is being deliberately indifferent to his ongoing pancreas condition—Plaintiff's claim is not clearly frivolous and, thus, survives initial review as to Dr. Kuhne.

(Doc. No. 8 at 5).

On November 13, 2015, Dr. Kuhne timely filed and served his Answer, which, among other things, asserted Plaintiff's failure to exhaust his administrative remedies as an affirmative defense to Plaintiff's sole, remaining claim against him. (Doc. No. 23 at 9). Dr. Kuhne submitted the November 6, 2015, affidavit of Finesse G. Couch ("Couch Affidavit") as Exhibit A to his Answer. (Doc. No. 23-1: Couch Aff.). The Couch Affidavit asserts that the only relevant grievance that Plaintiff appealed through all three steps of the NCDPS's Administrative Remedy Procedure ("ARP") before bringing this action pertained solely to Plaintiff's dismissed claim regarding Dr. Kuhne's alleged misdiagnosis of the cause of Plaintiff's flank pain. The Couch affidavit states that the grievance did not pertain to Plaintiff's only remaining claim that the prison failed to treat Plaintiff's pancreatic mass after the mass was identified. (Id. at 2-3; 12-19).

On November 16, 2015, this Court issued a scheduling order requiring the parties to file dispositive motions by April 14, 2016. (Doc. No. 24). On November 30, 2015, Defendant Kuhne filed the pending summary judgment motion. (Doc. No. 25). Defendant has submitted as part of his summary judgment materials Plaintiff's medical documents, grievances filed by Plaintiff, and Kuhne's own affidavit. See (Doc. No. 27). In the summary judgment motion, Defendant Kuhne asks this Court to enter judgment in his favor. Defendant Kuhne contends that his affidavit and exhibits show that Plaintiff was no longer under Defendant's care during the

5

time period relevant to Plaintiff's sole remaining claim—that staff was deliberately indifferent to the treatment of his pancreatic mass—and, in any event, Plaintiff has not exhausted his available administrative remedies as to that claim.

On December 17, 2015, this Court entered an order in accordance with <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the motion for summary judgment and of the manner in which evidence could be submitted to the Court. (Doc. No. 29). Plaintiff filed his response on January 4, 2016, in the form of an unsworn statement. (Doc. No. 30).

**II.     STANDARD OF REVIEW**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. <u>Id.</u>

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." <u>Id.</u> at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. <u>Id.</u> at 324. The nonmoving party must

present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 129 S. Ct. 2658, 2677 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

### III. DISCUSSION

Claims under 42 U.S.C. § 1983 based on an alleged lack of or inappropriate medical treatment fall within the Eighth Amendment's prohibition against cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To state a claim under the Eighth Amendment, a plaintiff must show a "deliberate indifference to serious medical needs" of the inmate. Id. "Deliberate indifference requires a showing that the defendants actually knew of and disregarded a substantial risk of serious injury to the detainee or that they actually knew of and ignored a detainee's serious need for medical care." Young v. City of Mt. Ranier, 238 F.3d 567, 575-76 (4th Cir. 2001) (citations omitted). "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990).

Allegations that might be sufficient to support negligence and medical malpractice claims do not, without more, rise to the level of a cognizable § 1983 claim. Estelle, 429 U.S. at 106; Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999) ("Deliberate indifference is a very high

7

standard—a showing of mere negligence will not meet it."). To be found liable under the Eighth Amendment, a prison official must know of and consciously or intentionally disregard "an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994); Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998). "[E]ven if a prison doctor is mistaken or negligent in his diagnosis or treatment, no constitutional issue is raised absent evidence of abuse, intentional mistreatment, or denial of medical attention." Stokes v. Hurdle, 393 F. Supp. 757, 762 (D. Md. 1975), aff'd, 535 F.2d 1250 (4th Cir. 1976). The constitutional right is to medical care. No right exists to the type or scope of care desired by the individual prisoner. Id. at 763. Therefore, a disagreement "between an inmate and a physician over the inmate's proper medical care [does] not state a § 1983 claim unless exceptional circumstances are alleged." Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985) (dismissing the plaintiff's § 1983 claim against a defendant physician for allegedly discharging the plaintiff too early from a medical clinic, as such claim did not rise to the level of deliberate indifference but would, "at most, constitute a claim of medical malpractice").

Plaintiff's sole remaining claim relates to Plaintiff's allegation that, after Dr. Moise determined that Plaintiff's abdominal scan and CT scan showed that Plaintiff had a pancreatic mass, Plaintiff was not treated for the mass at Marion, and that, at most, the prison medical team "provided him pain medications." (Doc. No. 8 at 5). Defendant Kuhne's affidavit and Plaintiff's contemporaneous medical records show that Plaintiff was first seen by Dr. Moise on September 9, 2013, for a gastrointestinal ("GI") consultation. (Doc. No. 27 at ¶ 13: Kuhne Aff.; Doc. No. 27-7: Ex. 7; Doc. No. 27-8: Ex. 8; Doc. No. 27-9: Ex. 9). Defendant Kuhne's affidavit and the attached medical records show that Kuhne did not examine, render any opinions, provide consultations, or provide treatment to Plaintiff after July 25, 2013. Moreover, Defendant Kuhne

8

retired from NCDPS during the fall of 2013, and he stopped providing medical treatment to NCDPS inmates on September 6, 2013. (Doc. No. 27 at ¶¶ 2; 7; 12; 16). Defendant Kuhne contends that he is, therefore, entitled to judgment as a matter of law with regard to Plaintiff's sole remaining claim that he and others failed to properly treat Plaintiff <u>after</u> he was diagnosed with a mass on his pancreas on August 21, 2013.[2] The Court agrees. Defendant Kuhne's evidence, which Plaintiff has not disputed, shows that Defendant did not personally participate in treating Plaintiff for his pancreatic mass once he was diagnosed. <u>See</u> (Doc. No. 27 at ¶¶ 7; 13; 16; Doc. No. 27-2: Ex. 2; Doc. No. 27-4: Ex. 4; Docs. 27-7, 27-8, 27-9: Exs. 7-9). Indeed, Defendant Kuhne had retired from NCDPS at that point, and his evidence shows that he last treated Plaintiff in any capacity in July 2013.[3] In sum, the Court finds that Defendant Kuhne is entitled to summary judgment as to Plaintiff's sole claim against him.

In response to the summary judgment motion, Plaintiff has submitted an unworn affidavit, in which he states that "[m]y sole claim is <u>not</u> that Dr. Kuhne improperly treated me <u>after</u> my diagnosis of a pancreatic mass, but he created the severeness of the infection of my pancreas, and a deliberate indifference, by leaving me in severe pain and suffering for a year,

---

[2] Defendant also argues that Plaintiff failed to exhaust his administrative remedies as to this sole remaining claim. The Court agrees. The entire thrust of Plaintiff's grievance is that Defendant Kuhne initially misdiagnosed the cause of Plaintiff's flank pain. (Doc. No. 23-1 at 12-19). Nowhere in his grievance does Plaintiff allege that he was denied care <u>after</u> Dr. Moise diagnosed him with a pancreatic mass. (<u>Id.</u>). In any event, as the Court discusses, <u>infra</u>, Plaintiff makes clear in his response to the summary judgment motion that the only claim he is pursuing is his claim against Defendant Kuhne for the initial failure to diagnose Plaintiff's pancreatic mass—a claim this Court has already dismissed.

[3] Furthermore, as Defendant notes, to the extent that Plaintiff is attempting to impose supervisory liability on Defendant Kuhne based on the actions of others, Defendant Kuhne cannot be held responsible as a supervisor because "principles of respondent superior do not apply in imposing liability under § 1983." <u>McWilliams v. Fairfax Cnty. Bd. of Supervisors</u>, 72 F.3d 1191, 1197 (4th Cir. 1996).

while he ignored all the blood and urine test results that he sent out, all stating that I did not have kidney stones, that allowed my pancreas a year to worsen to the point of failure." (Doc. No. 30 at 1-2). Plaintiff also states in his response that "[i]n the beginning after the first couple of blood and urine test[s] showed no sign of kidney stones. Dr. Kuhne [is liable] for not acknowledging that he did not know what was wrong with me, and not sending or giving me the proper test and procedures then, that were needed, like abdominal scan, c.t. scan, or G.I. doctor! Instead of a year later with my constant complaining of severe pain!" (Id. at 4). Plaintiff also contests, without presenting any supporting evidence, Defendant Kuhne's evidence that he stopped treating Plaintiff as of July 25, 2013. Plaintiff speculates—again, without any supporting evidence—that Defendant Kuhne was still treating him as late as September 2013.

Here, Plaintiff's response to the summary judgment motion makes clear that the only claim he is pursuing is a claim against Defendant based on Defendant's initial failure to diagnose Plaintiff's pancreatic mass. The Court has already dismissed such claim, finding that, at most, Plaintiff alleges a claim for medical malpractice, which is not sufficient to state a cognizable claim for deliberate indifference to serious medical needs. Thus, the Court finds that Defendant is entitled to summary judgment. The Court further finds that, to the extent that Plaintiff purported to bring a claim against Defendant based on Defendant's alleged treatment of Plaintiff <u>after</u> he was diagnosed with having a pancreatic mass, Defendant has presented undisputed evidence on summary judgment showing that Plaintiff's claim against Defendant based on post-diagnosis treatment is without merit because Defendant's evidence, which Plaintiff has not rebutted with any evidence of his own, shows that Defendant stopped treating Plaintiff as of July 25, 2013.

IV. CONCLUSION

In sum, for the reasons stated herein, Defendant Kuhne is entitled to summary judgment as to Plaintiff's claim against him for deliberate indifference to serious medical needs.

**IT IS, THEREFORE, ORDERED** that:

1. Defendant Kuhne's Motion for Summary Judgment, (Doc. No. 25), is **GRANTED**, and this action is dismissed.

2. The Clerk is respectfully instructed to terminate this case.

Signed: March 10, 2016

Frank D. Whitney
Chief United States District Judge